**2026-1223**

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**BTL INDUSTRIES, INC.,**

*Plaintiff-Appellant*,

**v.**

**INMODE LTD.,**

*Defendant-Appellee*,

**Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Case No. IPR2024-00703**

### PLAINTIFF-APPELLANT BTL INDUSTRIES, INC.'S REPLY BRIEF

<div style="margin-left:40%">

Seth R. Ogden
Nathan I. North
**Patterson Intellectual Property Law, P.C.**
1600 Division Street, Suite 500
Nashville, TN 37203
615.242.2400

Dallin Glenn
**BTL Industries, Inc.**
362 Elm Street
Marlborough, MA 01752
508.309.7948

*Counsel for Plaintiff-Appellant BTL
Industries, Inc.*

</div>

Dated: June 30, 2026

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2026-1223

**Short Case Caption** BTL Industries, Inc. v. InMode Ltd.

**Filing Party/Entity** BTL Industries, Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/30/2026

Signature: /s/ Seth R. Ogden

Name: Seth R. Ogden

ii

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| BTL Industries, Inc. | | BTL Global Limited |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

iii

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Richard M. Bemben<br>Sterne, Kessler, Goldstein & Fox PLLC | | |
| Jennifer M. Chagnon<br>Sterne, Kessler, Goldstein & Fox PLLC | | |
| Chandrika Vira<br>Sterne, Kessler, Goldstein & Fox PLLC | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below)   ☐   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

ARGUMENT .........................................................................................1

I.    InMode Defends a Teaching Analysis the Board Expressly Disavowed. .........1

    A.  The Board's own words and reasoning foreclose interpreting the analysis as a teaching-and-suggestion analysis. ..........................................2

    B.  The Board's analysis confirms it excluded teaching-or-suggestion from the inquiry. ...................................................................................3

    C.  BTL consistently asserts specific teachings motivating treatment of the claimed region and has not abandoned that position. ..................................8

II.   The Board's speculum limitation was, in substance, the bodily-incorporation error rejected in *Intel v. PACT*. ........................................................9

III.  BTL's Substantial Evidence Challenge Applies Independently to the Board's Disregard for Determinative, Contrary Evidence. .................................................13

    A.  Substantial-evidence review is review of the record as a whole. .......13

    B.  The Board's findings are based on an incomplete record, thereby lacking substantial evidence. ...............................................................14

    C.  The Board's error excluded three categories of evidence. ...................14

    D.  The Board's disavowal rebuts the presumption of consideration. .......17

IV.   *KSR*'s Known-Technique Rationale Renders the Claims Obvious. ................18

    A.  The correct inquiry. ..........................................................................18

    B.  The record contains the necessary evidence for the Known-Technique Rationale. ...........................................................................................20

C.  InMode's non-ablation distinction is a phantom limitation the Board declined to import. ..................................................................................22

D.  Bodily-incorporation and Known Technique are independent errors.23

    1.  Teaching-and-Suggestion of Claimed Regions. ...............................24

    2.  Secondary considerations. ............................................................24

V.  The Board Applied the Wrong Printed-Publication Standard to Ollivier, and the Error Was Not Harmless. ................................................................................26

A.  InMode and the Board erroneously create a rigid requirement that prior art must target a particular population for public accessibility. ................26

B.  The research aids show public accessibility both by directing the public to the article and evincing actual access. ....................................................30

C.  The Ollivier Publication discloses treating the claimed regions required to reverse the Board. ................................................................................31

CONCLUSION ....................................................................................................33

# TABLE OF AUTHORITIES

## Cases

*Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC*,
825 F.3d 1373 (Fed. Cir. 2016)..................................................................12

*Applications in Internet Time, LLC v. RPX Corp.*,
897 F.3d 1336 (Fed. Cir. 2018)..................................................................13

*Blue Calypso, LLC v. Groupon, Inc.*,
815 F.3d 1331 (Fed. Cir. 2016)........................................................ passim

*Cornell Univ. v. Hewlett-Packard Co.*,
No. 01-cv-1974, 2008 U.S. Dist. LEXIS 39343 (N.D.N.Y. May 14, 2008) .... 30, 31

*Gonzales v. West*,
218 F.3d 1378 (Fed. Cir. 2000).............................................................3, 17

*In re Baxter Int'l, Inc.*,
678 F.3d 1357 (Fed. Cir. 2012)..................................................................13

*In re Cronyn*,
890 F.2d 1158 (Fed. Cir. 1989)..................................................................27

*In re Keller*,
642 F.2d 413 (CCPA 1981) ........................................................................12

*Intel Corp. v. PACT XPP Schweiz AG*,
61 F.4th 1373 (Fed. Cir. 2023) ..................................................................20

*Intel Corp. v. Pact XPP Schweiz AG*,
No. 2022-1038 (Fed. Cir. Feb. 24, 2023) ........................................ passim

*Intel Corp. v. Qualcomm Inc.*,
21 F.4th 784 (Fed. Cir. 2021) ....................................................................20

*Jazz Pharms., Inc. v. Amneal Pharms., Inc.*,
895 F.3d 1347 (Fed. Cir. 2018)..................................................................28

*Koninklijke Philips N.V. v. Google LLC*,
948 F.3d 1330 (Fed. Cir. 2020).......................................................................... passim

*KSR International Co. v. Teleflex,*
550 U.S. 398 (2007) ................................................................... 18, 19, 20

*Medtronic, Inc. v. Daig Corp.*,
789 F.2d 903 (Fed. Cir. 1986).....................................................................3, 17

*Qualcomm Inc. v. Apple Inc.*,
24 F.4th 1367 (Fed. Cir. 2022) ................................................... 14, 15, 19

*Samsung Electronics Co. v. Infobridge Pte. Ltd.*,
929 F.3d 1363 (Fed. Cir. 2019).....................................................................27

*Snap Inc. v. YouMap, Inc.*,
No. 2024-1120, 2025 U.S. App. LEXIS 25432 (Fed. Cir. Oct. 1, 2025) ................19

*Valve Corp. v. Ironburg Inventions Ltd.*,
8 F.4th 1364 (Fed. Cir. 2021) ........................................................ 28, 29

*Velander v. Garner*,
348 F.3d 1359 (Fed. Cir. 2003).....................................................................18

*Voter Verified, Inc. v. Premier Election Sols., Inc.*,
698 F.3d 1374 (Fed. Cir. 2012)........................................................ 26, 27, 28, 33

**INTRODUCTION**

The Board denied BTL's petition on one recurring ground: no asserted reference *discloses directly heating* the anatomical regions recited in the independent claims (the "claimed regions"). But obviousness asks not whether a reference expressly discloses a limitation, but what the prior art as a whole would have taught and suggested to a skilled artisan, including ordinary inferences and creative steps. *Koninklijke Philips N.V. v. Google LLC*, 948 F.3d 1330, 1337 (Fed. Cir. 2020). The Board declined that inquiry. Appx24 ("Petitioner's argument is misplaced because the issue is whether Edwards discloses the claimed heating of the vagina from the introitus inwardly to a location from 1 cm to 3.5 cm in from the introitus, not whether a POSA would have understood that Edwards's device could be used to meet this claim limitation."). Instead, the Board essentially applied the legal principles of a § 102 analysis: the Board limited Edwards to its express disclosure, treated the speculum as a ceiling on what Edwards could teach or be modified to include, and never reached BTL's additional motivation and reasonable-expectation evidence. That framing was legal error and outcome-determinative.

**ARGUMENT**

I.     **InMode Defends a Teaching Analysis the Board Expressly Disavowed.**

InMode alleges the Board weighed what the prior art taught and suggested, found the teaching wanting, and therefore deemed combinability "moot." Resp. Br.

1

1, 24–25, 35. The Board's written decision forecloses that premise. The Board asked "whether Edwards *discloses* the claimed heating...*not whether a POSA would have understood* that Edwards's device could be used to meet this claim limitation." Appx24 (emphasis added). The surrounding analysis confirms the restriction. By limiting its inquiry to express disclosure, the Board ignored what the references and evidence of well-known procedures taught and suggested as a whole. InMode defends an analysis the Board did not perform.

A.    **The Board's own words and reasoning foreclose interpreting the analysis as a teaching-and-suggestion analysis.**

InMode frames the Board as finding that "neither Edwards nor Mosher disclos[es] or suggest[s] the claimed treatment area," making the combination "moot." Resp. Br. 35. That recasts the decision as a suggestion inquiry resolved on the merits, but the Final Written Decision says otherwise. After quoting Edwards's fourth embodiment and recounting the parties' speculum arguments, the Board stated that the issue was whether Edwards "discloses" the claimed heating, "not whether a POSA would have understood" Edwards's device could meet the limitation. Appx24. The Board did not find that a skilled artisan would not have understood Edwards to teach or suggest treatment in the claimed region; it held that the artisan's understanding was beside the point. That is not a finding about the strength of the teaching. It is a statement about the law which the Board applied.

That distinction decides the appeal. The threshold issue is whether the Board erred by declining to consider teaching-and-suggestion evidence, not whether the Board weighed it correctly. *See* Resp. Br. 3. Requiring express disclosure and treating teaching-or-suggestion evidence as irrelevant was legal error, reviewed *de novo*, without reweighing facts.[1]

## B.    The Board's analysis confirms it excluded teaching-or-suggestion from the inquiry.

The Board's analysis structure forecloses treating "disclosing" as shorthand for teaching and suggestion. Nor was the Board's reference to Edwards's "device" limited to BTL's speculum-removal sub-argument.

The Board recognized Edwards's teaching that "[r]emodeling both the anterior wall and the posterior wall provide circumferential vaginal wall tightening, resulting [in] physical and psychological improvement in the area of sexual

---

[1] Nor is there an argument that the Board's silence may be presumed to mean the Board considered evidence not expressly discussed. BTL does not rely on the Board's silence. BTL relies on the Board's own statement declining to perform part of the obviousness analysis. Therefore, InMode's assertion that the Board is presumed to consider evidence not discussed is misplaced. *See* Resp. Br. 47 (citing *Gonzales v. West*, 218 F.3d 1378, 1381 (Fed. Cir. 2000); *Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 906 (Fed. Cir. 1986)).

function." Appx23 (quoting Appx1093 (13:19–22)); Appx27 (same). Edwards itself further describes the result of the treatment as affecting the "proximal and mid-urethra." Appx1093 (13:14–23). The Board, in fact, acknowledged that BTL argued that treating the vaginal wall adjacent to the mid-urethra falls within the claimed region. Appx25. But the Board excluded that teaching because "[a]s [the Board] found above, Edwards's fourth embodiment includes the use of a speculum, which would result in a treatment area outside the claimed treatment area." Appx25. Edwards taught treating the claimed region by acknowledging the benefits of remodeling the claimed regions even if Edwards did not expressly disclose applying radiofrequency heating to the claimed region.

But the Board instead limited the inquiry to what Edwards specifically disclosed, confirming this limited inquiry by stating the question was not "whether a POSA would have understood that Edwards's device could be used to meet this claim limitation." Appx23-Appx24.

4

The Board's limited scope is further confirmed because the record[2] bridged any evidentiary gap in Edwards and Mosher.[3] Appx134-Appx135. After limiting Edwards's teaching based on the speculum, the Board erroneously constrained

---

[2] InMode criticizes BTL's reliance on "the record" (*e.g.*, Resp. Br. 26, 40), but BTL's Opening Brief reliance on the record includes: (1) Dr. Berenholz explaining that it was well known to treat "the outer third of the vagina, including the introitus, vulva, and perineal body" with lasers and citing the Ollivier publication (not the trade secret), Appx982 (¶49) (cited at Op. Br. 24, 26–27), and (2) Dr. Poulos specifically stating that she agreed with that statement, Appx1811 (90:1–12) (cited at Op. Br. 24, 26–27). BTL cited both passages to the Board. Appx112-Appx113; Appx134; Appx151; Appx171; Appx311-Appx312; Appx325; Appx327-Appx331.

[3] InMode contends the Board's findings that Mosher and Ingle do not disclose the claimed region independently moot the combination. *See* Resp. Br. 36, 48. They do not. Regardless of those findings, the Board's legal framework prevented it from considering the record as a whole, including BTL's evidence that treating the claimed region was well known. *See infra* Section III. The Board's failure to weigh that evidence, driven by the same express-disclosure error, was itself error and is not cured by the individual findings on Mosher and Ingle.

Edwards to its express disclosure. From there, the Board continued to analyze Mosher in isolation.

The Board similarly used Edwards's speculum to avoid reaching the additional record evidence that treating the claimed region was known. The '511 Patent's Background admits that loosening "of the vagina and its opening, the introitus," was a known problem decreasing sexual pleasure and that tightening treatments were known; its asserted advance was *non-invasive* treatment, not first treatment of the region. Appx49 (1:62–2:21).

BTL also submitted expert testimony that treating those regions[4] was known and that vulva, introitus, and vagina tissues would respond similarly to radiofrequency treatment. Appx134-Appx135 (citing Appx982 (¶49); Appx1000 (¶91)). InMode offered no contrary tissue-response evidence, and the Board did not engage that evidence when finding Ground 1 failed. The Board considered Edwards's sexual-function teaching and Mosher in isolation, erroneously

---

[4] InMode alleges that "the declaration cite does not mention the specific treatment areas recited in the independent claims." Resp. Br. 40. Although Dr. Berenholz did not use the exact claim terms, Dr. Berenholz did state that it was known to "tighten vaginal support tissue and the outer third of the vagina, including the introitus, vulva, and the perineal body," thereby encompassing the claimed regions. Appx982 (¶49).

concluding it did not need to consider what the references taught and suggested as a whole. *See* Appx24.

The Board's later analysis confirms that its choice of words was deliberate. When analyzing claim 35, the Board barred any teaching beyond the express disclosure because "Edwards[] does not describe rotating the speculum," despite evidence the blade could be disengaged into another position in the speculum to treat different locations. *See* Appx28; Appx1093 (13:60–62). When the Board reached the external-tissue claims, it expressly recited the governing standard—that "[a]n obviousness analysis must focus on what a person having ordinary skill in the art would have been motivated to do, rather than merely what such a person would have been able to do." Appx30 (emphasis removed). The Board thus knew, and could articulate, the motivation inquiry. Yet in analyzing claims 1 and 35, the Board recited no such standard.[5] It framed the question instead as whether Edwards "discloses" the claimed region. Appx24. The express-disclosure framing was the analysis the Board declared and in fact performed, not a shorthand or misstatement for a teaching analysis.

---

[5] Even where it recited the more flexible standard, the Board applied it to impose a second bodily-incorporation requirement, faulting the Petition for not specifying the exact parameters for treating the external regions. *See infra* Section II.

Read in context, Appx24 means what it says: the Board required express disclosure and declined to consider what Edwards taught or suggested to a skilled artisan. That was legal error.

### C.    BTL consistently asserts specific teachings motivating treatment of the claimed region and has not abandoned that position.

BTL identified a concrete teaching: Edwards's statement that radiofrequency-induced vaginal-wall tightening yields "physical and psychological improvement in the area of sexual function." Appx1093 (13:19–22); Op. Br. 26–29, 32. Even to the extent the Board found Edwards and Mosher lacking, the record offers ample evidence that skilled artisans knew to treat the claimed region to improve sexual function. The '511 Patent admits treating the claimed regions was known when discussing loosened introitus. *See* Appx49 (2:1–21). InMode's expert agreed that a tighter introitus may enhance, and a loose introitus may decrease, sexual pleasure. Appx1823-Appx1824 (102:13–25, 103:1–25).

BTL maintains that Edwards's sexual-function teaching, under a proper obviousness analysis, would lead a skilled artisan to treat the claimed regions or, alternatively, supplies motivation to treat near the introitus. BTL does not appeal the Board's finding that Edwards does not *expressly disclose* applying heat from the introitus to 1–3.5 cm inward. That is not a concession; it is obviousness. *See Koninklijke*, 948 F.3d at 1337. The Board's express-disclosure requirement applied the wrong test. *See* Appx24.

8

**II.    The Board's speculum limitation was, in substance, the bodily-incorporation error rejected in *Intel v. PACT*.**

InMode insists there was no bodily-incorporation error because "the Board was not asked to—and did not—determine whether the structures of the references could physically be combined." Resp. Br. 30–31. InMode responds to a charge BTL does not make. The bodily-incorporation error is not confined to cases of literal physical combination. It applies as well to the Board faulting a petitioner for failing to explain how to *modify* the references to accommodate the proposed combination. *Intel Corp. v. Pact XPP Schweiz AG*, No. 2022-1038, slip op. at 6–7 (Fed. Cir. Feb. 24, 2023); *accord Koninklijke*, 948 F.3d at 1338 (rejecting arguments regarding compatibility of specific references for defeating motivation to combine[6]). That is precisely what the Board did here.

The Board repeatedly held that "The Petition includes no persuasive explanation as to why it would have been obvious *to modify Edwards to use the treatment blade without the speculum*." Appx26-Appx27 (emphasis added); Appx30 ("The Petition includes no persuasive explanation as to why a POSA would have

---

[6] In *Koninklijke Philips N.V. v. Google LLC*, the obviousness ground was SMIL 1.0 in combination with the general knowledge in the art, and that general knowledge was corroborated by Hua. 948 F.3d at 1334. The Court rejected an argument based on incompatibility of SMIL 1.0 and Hua. *Id.* at 1338.

been motivated to modify Edwards to use the treatment blade without the speculum, so as to treat external tissue."). In each instance the Board treated the speculum as a physical obstacle strictly limiting the teachings of Edwards unless BTL explicitly showed Edwards (or a substantially similar device) *actually engineered* around the speculum.

This Court has held that substantially similar reasoning is legal error. In *Intel Corp. v. PACT XPP Schweiz AG*, the Board faulted the petitioner because it "has not specifically explained how a person of ordinary skill in the art would have modified King[]...to incorporate a shared bus as disclosed in Arimilli." No. 2022-1038, slip op. at 5, 7 (Fed. Cir. Feb. 24, 2023) (quoting the Board). This Court held the Board "legally erred in requiring evidence that Arimilli's specific caching mechanism could be 'bodily incorporated' into King's bus system." *Id.*, slip op. at 7. The Board's Final Written Decision reflects the same error as *Intel* at an earlier point of the analysis: the Board demanded an explanation (from Edwards or another reference) for removing the speculum from Edwards before permitting further analysis. This stops a step earlier than the Board's analysis in *Intel*, where the Board erred by refusing to combine two references, but the Board here refused to combine *any*

10

reference with Edwards (general knowledge,[7] Mosher, or Ingle). The Board's analysis demanded bodily incorporation and, even further, failed to consider what the evidence in the Ground *as a whole* teaches and suggests.

InMode's "it was not *literally* bodily incorporation" defense[8] is the same argument the appellee made—and lost—in *Intel*. There, the patent owner "disagree[d] that the Board required evidence of bodily incorporation" and characterized the Board as having merely rejected a proposed modification. *Id.* The Court rejected that characterization. *Id.* No matter the label InMode applies, the Board faulted BTL for not explaining how to modify Edwards's device as a prerequisite to any further analysis. That requirement is the error.

---

[7] *See Koninklijke*, 948 F.3d at 1337 ("Although the prior art that can be considered in inter partes reviews is limited to patents and printed publications, it does not follow that we ignore the skilled artisan's knowledge when determining whether it would have been obvious to modify the prior art.").

[8] InMode does not materially address *Intel*, relegating the case to a single, uncited mention in the brief. Resp. Br. 45 ("Ultimately, the Board was correct in finding that the evidence did not support BTL's positions and BTL offers nothing to show that Mosher or Ingle teaches the claimed treatment areas, which is a condition precedent for BTL's *KSR* and *Intel* arguments.").

The point is sharpened because the '511 Patent's claims are method claims. As no specific device is required for these claims, the claims are obvious if *the treatment* is obvious. The independent claims recite anatomical treatment regions and the steps of heating and remodeling; they recite no device. *See* Appx56-Appx57. For those claims, BTL primarily relied on Edwards for its teachings about treating vaginal tissue with radiofrequency energy to improve sexual function. The obviousness question asks what a skilled artisan would have been taught and motivated to do. The authorities InMode invokes confirm this rule: the test is not whether a secondary reference's features "may be bodily incorporated into the structure of the primary reference" but "what the combined teachings of the references would have suggested." *In re Keller*, 642 F.2d 413, 425 (CCPA 1981); *see also Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC*, 825 F.3d 1373, 1381 (Fed. Cir. 2016).[9] All BTL was required to show was that there was a teaching or motivation to provide heat to the claimed regions such that remodeling would occur.

---

[9] And indeed, the Court in *Intel* used these same cases when faulting the Board for its bodily incorporation analysis. No. 2022-1038, slip op. at 6 (discussing *Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC* and *In re Keller*).

12

### III. BTL's Substantial Evidence Challenge Applies Independently to the Board's Disregard for Determinative, Contrary Evidence.

#### A. Substantial-evidence review is review of the record as a whole.

A finding is supported by substantial evidence only if it also accounts for the evidence that detracts from the finding. *Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336, 1352 (Fed. Cir. 2018). InMode embraces this very standard, citing the same case for the proposition that arbitrary-and-capricious review requires "examination of the record as a whole." Resp. Br. 39 (quoting *Applications in Internet Time*, 897 F.3d at 1352). An agency that refuses to consider evidence bearing on the dispositive issue does not satisfy that standard; its decision is, by definition, arbitrary and capricious. *Applications in Internet Time*, 897 F.3d at 1352, 1358.[10]

---

[10] The arbitrary-and-capricious standard governs only the failure-to-consider component of this appeal, addressed in Section III. The legal-framework error addressed in Section I is a question of law reviewed de novo. *See In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1361 (Fed. Cir. 2012). The Board can, and did, err on independent bases that trigger different standards of review.

13

**B.      The Board's findings are based on an incomplete record, thereby lacking substantial evidence.**

BTL's substantial-evidence challenge contends that the no-teaching finding rested on an incomplete record because the Board's legal framing excluded contrary evidence that bore on that finding. BTL does not argue that silence alone defeats substantial evidence; BTL argues that excluding contrary evidence does.

Legal framing aside, the Board treated the speculum as a ceiling on Edwards's teachings and never reached the contrary motivation or success evidence (in Edwards and other evidence). That evidentiary exclusion leaves the finding unsupported by substantial evidence.

**C.      The Board's error excluded three categories of evidence.**

First, because the Board limited its review to what Edwards *disclosed* rather than what the record as a whole taught, the Board ignored multiple pieces of evidence showing a skilled artisan's motivation to treat the claimed region.

Regarding Edwards, the Board specifically excluded disclosure of the benefits of remodeling (and thereby teaching of treating) the claimed regions. *See* Appx25; *supra* Section I.B.

Additionally, the '511 Patent itself admits that treating throughout the vaginal canal, including at the introitus, was known. Appx310 (citing Appx49 (1:62–2:21) ('511 Patent Background)); *Qualcomm Inc. v. Apple Inc.*, 24 F.4th 1367, 1376 (Fed. Cir. 2022) (AAPA may furnish motivation or supply a missing limitation);

14

*Koninklijke*, 948 F.3d at 1339 ("[I]t is appropriate to rely on admissions in a patent's specification when assessing whether that patent's claims would have been obvious."). Indeed, this Court's "precedent treats AAPA as binding on the patentee." *Qualcomm Inc.*, 24 F.4th at 1375 n.11.

BTL's expert testified that treatments of the claimed region using other techniques were well known and used to improve sexual function. Appx982 (¶49); *see also* Appx310-Appx311 (noting that InMode's expert had performed labioplasties since before 1992). InMode's expert agreed with that paragraph. Appx1811 (90:1–12). BTL's expert also testified that "vulva, introitus, and vagina tissue" would have similar responses to radiofrequency treatment, namely tissue remodeling. Appx1000 (¶91) (cited by Appx134).

Second, considering only what Edwards *disclosed* rather than what was taught by the record as a whole caused the Board to ignore testimony from both parties' experts agreeing that a skilled artisan motivated to treat near the introitus would know to simply not use a speculum. In other words, the speculum was not a limitation on the skilled artisan's understanding.

InMode's expert testified that a skilled artisan usually would not use a speculum when treating the vaginal opening. Appx1758 (37:14–20). She also admitted Edwards does not say the treatment element cannot be used without a speculum; it only describes use with one. Appx1865 (144:17–23). Her later contrary

answer rested on a desire to follow a hypothetical device manufacturer's instructions, not on Edwards's disclosure of methods. Appx1865-Appx1866 (144:24–25, 145:1–9).

BTL's expert further testified that the speculum could be rotated and that treatment near the introitus could be completed without one. Appx990 (¶ 69).

Third, the Board disregarded reasonable-expectation evidence. BTL's expert testified that vulva, introitus, and vagina tissue respond similarly to radiofrequency energy by collagen remodeling and shrinkage.[11] Appx134-Appx135 (citing

---

[11] The Board did separately address reasonable expectation of success for the external-tissue claims (claims 43 and 51), but that treatment does not aid InMode. The Board integrated the success question into the same speculum-based rejection, faulting the Petition for not explaining "why a POSA would have been motivated to modify Edwards to use the treatment blade without the speculum, so as to treat external tissue." Appx30. The Board even went further by not only requiring specifics for removing the speculum but also requiring exact radiofrequency configurations (e.g., settings and timing) for treating the external regions. The claims recite no such parameters, Appx56-Appx57, nor do these parameters affect whether the treatment would be reasonably expected to succeed in remodeling the tissue. For these requirements, the Board cited Dr. Berenholz's deposition discussing how

Appx1000 (¶91); Appx976-Appx979 (¶¶39–43)). That evidence supported an expectation that the same remodeling technique would work wherever applied.

These exclusions share one cause: the Board used the speculum to limit the obviousness analysis and therefore never reached the additional motivation or success evidence.

### D.     The Board's disavowal rebuts the presumption of consideration.

InMode invokes the presumption that an adjudicator reviews all evidence absent an explicit indication otherwise. Resp. Br. 47 (citing *Medtronic*, 789 F.2d at 906; *Gonzales*, 218 F.3d at 1381). But InMode ignores that the Board expressly stated that "the issue is...not whether a POSA would have understood that Edwards's device could be used to meet this claim limitation." Appx24. That is the explicit expression *Medtronic, Inc. v. Daig Corp.* requires to rebut the presumption.

---

BTL's later developed device has different configurations to make the treatment more tolerable to the patient. Appx30 (citing Appx2136-Appx2137 (34:3–25, 35:1–12) (asking about how to use BTL's EMFEMME 360)). This testimony does not address whether the target tissue would in fact remodel. Moreover, the testimony addresses a later-developed device, not what a skilled artisan would have understood based on the prior art at the time of the '511 Patent's filing date. Dr. Poulos's merely agrees with Dr. Berenholz's tolerability discussion. Appx2055 (¶130).

Nor did the Board weigh the evidence and find it wanting. *See* Resp. Br. 46; *cf. Velander v. Garner*, 348 F.3d 1359, 1371 (Fed. Cir. 2003). The Board deemed the motivation-and-success evidence outside the question it chose to decide. *Velander v. Garner* protects reasoned weighing, not refusal to consider evidence required by the governing standard.

Neither of the doctrines asserted by InMode give deference to the findings of the Board in this case.

## IV. *KSR*'s Known-Technique Rationale Renders the Claims Obvious.

The Board could not properly assess the known-technique rationale because it asked the wrong question. The record showed that radiofrequency heating to remodel collagen-rich tissue was known; treating near the introitus was desirable and known; and the claimed tissues would respond predictably to radiofrequency treatment. Appx112-Appx113; Appx49 (1:62–2:21); Appx133-Appx134. Corrected, the analysis resolves against the claims.

### A. The correct inquiry.

Under *KSR International Co. v. Teleflex*, "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." *KSR International Co. v. Teleflex*, 550 U.S. 398, 417 (2007). Express disclosure of the precise application is

not required, and the inquiry accounts for "inferences and creative steps that a person of ordinary skill in the art would employ." *Id.* at 418. *Intel* applied this principle holding that where prior art addresses the same problem and a reference supplies a known way to address it, the motivation to combine follows. No. 2022-1038, slip op. at 8 ("there is strong evidence of motivation to combine" where references are "all concerned with improving" the same objective).

InMode suggests *KSR*'s known-technique rationale is confined to improving a "device." *See* Resp. Br. 26. It is not. *KSR* focuses on techniques, problems, and the "inferences and creative steps" a skilled artisan would employ, and it warns against confining obviousness to the prior art's exact context. 550 U.S. at 415–18, 421. InMode cites no authority limiting the rationale to device-to-device improvements.

InMode also asserts the rationale applies only when the references *disclose* the claimed features. *See* Resp. Br. 26, 38. But even if Edwards's teachings leave a gap, obviousness does not require express disclosure of every element by the prior art references. *See Koninklijke*, 948 F.3d at 1337; *Snap Inc. v. YouMap, Inc.*, No. 2024-1120, 2025 U.S. App. LEXIS 25432, at *8, *11–12 (Fed. Cir. Oct. 1, 2025) (accepting "well-understood programming" to meet a claim element in an opposition to a motion to amend); *Qualcomm*, 24 F.4th at 1376 (accepting that uses for AAPA "include[s]...supplying a missing claim limitation."). "[T]he motivation-to-combine analysis 'need not seek out precise teachings directed to the specific subject matter

19

of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ'" and a known technique for a known problem supplies motivation. *Intel Corp. v. PACT XPP Schweiz AG*, 61 F.4th 1373, 1379 (Fed. Cir. 2023) (quoting *KSR*, 550 U.S. at 418); *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 784, 799–800 (Fed. Cir. 2021)).

The Petition fits that framework: applying known radiofrequency remodeling to tissue laxity in a region already known to benefit from tightening. Appx111-Appx113. BTL's evidence also showed that mucosal regions throughout the female genitalia, including the claimed regions, would respond similarly to radiofrequency remodeling. Appx134-Appx135 (citing Appx1000 (¶91)).

## B. The record contains the necessary evidence for the Known-Technique Rationale.

First, heating tissue using radiofrequency to remodel collagen-rich tissue was well-known before the '511 Patent, corresponding to the required known technique. Edwards, Mosher, and Ingle each apply that known technique. BTL's expert further confirmed that using radiofrequency to heat tissue and remodel it was well known. Appx982 (¶49). The '511 Patent's own Background recites the established science of thermal collagen contraction and cites prior patents for "Controlled Contraction of Collagen Tissue Using RF Energy." Appx49 (1:35–2:16).

Second, the region near the introitus and lower vagina was known to benefit from tightening. Edwards teaches that vaginal-wall tightening improves sexual

20

function. Appx1093 (13:19–22). And although the Board recognized this disclosure taught the claimed regions benefited from remodeling (the results of the treatment), the Board rejected any teaching linked to that disclosure because the speculum prevented directly heating the claimed region. Appx24-Appx25. Further, both experts testified that tightening treatments using other procedures were known and used "to improve sexual function." Appx982 (¶49); Appx1811 (90:1–12). And the '511 Patent admits that looseness of "the vagina and its opening, the introitus[,]" was a known problem decreasing sexual pleasure; the patent's asserted advance was non-invasive treatment. Appx49 (1:62–2:21).

Third, the Petition provided reasonable-expectation evidence. BTL's expert testified that the vaginal-region tissues respond similarly to radiofrequency treatment, so the known technique would be expected to produce remodeling throughout that region. Appx134-Appx135 (citing Appx1000 (¶91); Appx976-Appx979 (¶¶39–43)).[12]

The Petition therefore asserted a proper *KSR* known-technique rationale: applying a known radiofrequency remodeling technique to tighten a region already known to benefit from tightening. *See* Appx134-Appx138; Appx310-Appx312.

---

[12] See supra n.11.

21

### C.     InMode's non-ablation distinction is a phantom limitation the Board declined to import.

InMode alludes at various points that the Board further rejected the obviousness challenge because BTL's asserted prior art disclosed ablative procedures while the '511 Patent was directed to a novel non-ablative procedure. *See, e.g.*, Resp. Br. 4, 40. The problem: no independent claim requires that feature. Each independent claim recites "heating the target tissue" and "remodeling the therapeutic zone," together with a treatment location; none recites a non-ablative limitation. Appx56-Appx57. The closest the claims get to such a limitation is dependent claim 24 reciting "the heating does not modify a mucosal epithelium." Appx56. And other dependent claims add a cooling step without reciting non-ablation. *See, e.g.*, Appx56 (claims 9–16).

The Board did not finally construe "heating" or "remodeling." It stated that only certain limitations required express construction (two wherein clauses) and did not construe the heating or remodeling steps. Appx10-Appx16. InMode's non-ablation originates from competing constructions considered at institution, which, in turn, originated from the prior patent owner's earlier IPR decisions to institute (BRI)

22

and district court litigation. *See* Appx401. The Final Written Decision declined to adopt those imported limitations.[13]

There is therefore no "non-ablation" construction for InMode to defend or for BTL to appeal.

### D. Bodily-incorporation and Known Technique are independent errors.

The errors are distinct. The *KSR* error demanded express disclosure instead of asking what the art taught and suggested. *See* Appx24. The Edwards-specific bodily-incorporation error used the speculum as a structural limit on obviousness.

If this Court finds the Board erred on either ground, the question that remains is the remedy. In *Intel*, this Court did not merely vacate; it reversed and directed a finding of motivation, holding that "substantial evidence could only support a finding" of motivation to combine. No. 2022-1038, slip op. at 8. This case mirrors *Intel*, with two nuances: (1) whether the claimed regions were sufficiently taught and suggested and (2) the role of secondary considerations.

---

[13] Nor did BTL agree to any particular construction. The Petition recites both sets of prior constructions and states that construction is not necessary to resolve the IPR. *See* Appx117, Appx119-Appx120. Notably, InMode's proposed 80 degrees C (176 degrees F) cap would not avoid substantially affecting the epithelium, it would burn the epithelium without cooling.

### 1.    *Teaching-and-Suggestion of Claimed Regions.*

As explained above, the record (including both parties' experts testimony) showed it was known to treat the claimed regions. *See supra* Section I.A., IV.A. The Board found otherwise because of Edwards's speculum. If the Court finds that the Board erroneously limited the obviousness inquiry, then there is no dispute that the claimed regions are sufficiently taught or suggested.

### 2.    *Secondary considerations.*

InMode was partially correct to note a misstatement in BTL's opening brief, which stated that "InMode raised no arguments regarding secondary considerations." Op. Br. 3, 17, 35. The more accurate version of BTL's statement is that (1) InMode failed to offer evidence of secondary considerations that sufficiently meet the nexus requirement, and (2) InMode failed to argue secondary considerations at all for 55 of the 58 claims. InMode only argued secondary considerations for claims 1, 26 and 35, and improperly relied on a presumption of nexus with the evidence proffered. *See* Appx332-Appx333. Ultimately, the misstatement does not change the result for which BTL advocates: that the Board should be reversed. Nor does it affect BTL's alternative request for vacatur and remand.

As BTL argued in the Petitioner's Reply, InMode's secondary considerations argument in the POR relied on a presumption of nexus, but that presumption does

not apply where the critical feature of the product is not present in the claims. Appx332-Appx333. In this instance, the claims do not recite cooling, which the evidence of secondary considerations identified as the critical feature. Appx332-Appx333. Subsequently, InMode primarily argued it was not required to show nexus. Appx371. Alternatively, InMode alleged that "cooling" is not required by the independent claims and that the evidence of secondary considerations linked to the independent claims with gel and cooling, but does not explain how the reference establishes nexus independent of cooling. *See* Appx371-Appx372. Finally, InMode argued that dependent claims reciting cooling are within the scope of independent claims. Appx372. InMode did not explain how this principle affects the nexus inquiry. Appx372.

But the plain language of the independent claims (and claim 26) do not require cooling, nor do the claim constructions adopted in prior proceedings, as InMode admits in its Sur-Reply. Appx371-Appx372. Thus, "cooling" cannot provide a nexus to the claims for which InMode asserted secondary considerations (claims 1, 26, and 35). Appx332.

Separately from the nexus question, BTL's statement that InMode did not argue secondary considerations remains true for Ground 2 in its entirety and Ground 1 with regards to independent claims 43 and 51 and dependent claims 2-25, 27-34, 35-42, 44-50, 52-58. *See* Appx332.

25

**V.    The Board Applied the Wrong Printed-Publication Standard to Ollivier, and the Error Was Not Harmless.**

      **A.    InMode and the Board erroneously create a rigid requirement that prior art must target a particular population for public accessibility.**

InMode and the Board impose a rigid public-accessibility framework requiring the prior art to target skilled artisans. That approach ignores this Court's flexible, fact-dependent standard and treats examples of sufficient evidence as mandatory elements.

InMode argues BTL had to prove Salon.com was "well known to the community interested in the subject matter," emphasizing that both experts were unaware of Salon.com. Resp. Br. 50–51 (quoting *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1349 (Fed. Cir. 2016)). But *Blue Calypso LLC v. Groupon, Inc.*, summarizing *Voter Verified, Inc. v. Premier Election Sols., Inc.*, 698 F.3d 1374 (Fed. Cir. 2012), was describing "factors [that] overcame the absence of evidence demonstrating that the website at which the article was located *was indexed* and thereby findable by an internet search engine." 815 F.3d at 1349 (emphasis added). *Blue Calypso* described one way to prove accessibility without indexing; it did not create a "well known" requirement.

In doing so, InMode misapplies the Court's principle that "accessibility to some people is not the test; accessibility to those interested in the art is the test." *See* Resp. Br. 52. That principle does not require notoriety on art accessible to the general

26

public. Rather, that principle is directed to limited-access situations such as confidential conferences, unindexed dissertations, or obscure personal webpages— not a searchable website with 2.6 million unique monthly visitors. *See Voter Verified*, 698 F.3d at 1380; *In re Cronyn*, 890 F.2d 1158, 1160–61 (Fed. Cir. 1989).

Both *Voter Verified* and *Blue Calypso* only require public accessibility, which is assessed based on the record as a whole. For example, *Blue Calypso* involved an obscure personal webpage with no evidence of viewing, downloading, comparable notoriety, or searchability. 815 F.3d at 1349–50. The Court also rejected the use of (1) an assumption that general search engines could in theory find a random personal website and (2) an assumption that an article published by the same author on a similar subject would somehow direct anyone (much less a skilled artisan) to visit that author's personal website.[14] *See id.* The Court expressly stated that "a published article with an express citation to the potentially invalidating reference would

---

[14] InMode also points to *Samsung Electronics Co. v. Infobridge Pte. Ltd.* for support. *See* Resp. Br. 53 (citing *Samsung Electronics Co. v. Infobridge Pte. Ltd.,* 929 F.3d 1363 (Fed. Cir. 2019)). But *Samsung Electronics* simply considered as a factor that public accessibility was not shown where the evidence only showed "access" by the same persons involved in the original disclosure rather than access by unaffiliated members of the public. *See* 929 F.3d at 1369.

similarly provide the necessary guidance" and found this was the sort of evidence missing from the research aid asserted. *See id.* at 1350. This case, by contrast, involves a popular, searchable website *plus* evidence of actual access (research aids with express citations to the invalidating reference).

Because "public accessibility" is the touchstone, this Court emphasizes flexibility for the case-by-case inquiry, contrary to InMode's rigid standard. *See Voter Verified*, 698 F.3d at 1380; *Blue Calypso*, 815 F.3d at 1348–49 n.9; *Jazz Pharms., Inc. v. Amneal Pharms., Inc.*, 895 F.3d 1347, 1356, 1359 (Fed. Cir. 2018). Actual retrieval can independently support accessibility. *Blue Calypso*, 815 F.3d at 1349 n.9 ("[I]n the absence of other evidence, such as evidence that the reference was actively distributed to the public *or actually retrieved by members of the public*, indexing is a useful inquiry to evaluate public accessibility." (emphasis added)). And *Jazz Pharmaceuticals, Inc. v. Amneal Pharmaceuticals, Inc.* expressly stated that both indexing and searchability are only part of the inquiry. 815 F.3d at 1359.

InMode also ignores *Valve Corp. v. Ironburg Inventions Ltd.* when asserting Salon.com must be known by skilled artisans. In *Valve*, an online consumer review of an Xbox 360 controller was publicly accessible even though it targeted consumers, not engineers. *See Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1370, 1373–76 (Fed. Cir. 2021). The Court relied on evidence of actual access,

28

citation in a patent, and the examiner's internet search.[15] *Id.* at 1374–76. Although prior art often targets skilled artisans, that is not required. Public accessibility—not prestige, notoriety, or audience specialization—is the test.

Salon.com is different from the obscure references often seen in precedent. BTL showed Salon.com had 2.6 million unique visitors in December 2000. *See* Appx122. It was not a personal webpage, obscure newsletter, or limited conference; it was a popular public website. *See* Appx122.

Salon.com is undoubtedly publicly accessible, and the particular article was searchable. BTL provided evidence that articles were indexed by category and Salon.com provided users the ability to search based on those categories. *See* Appx122-Appx123 (citing Appx1709-Appx1711).

That *Salon.com* is not directed specifically at medical providers is of no moment. *Valve* found public accessibility without any such requirement. Like the review in *Valve*, Ollivier was directed at consumers of the treatment, promoting Dr. Matlock's and similar treatments. BTL provided evidence of indexing, searchability, *and actual access* to the Board. But the Board found *Salon.com* was not publicly accessible. Appx34. The Board's finding applied a legally erroneous standard.

---

[15] The Court's remaining evidentiary analysis served to confirm the publication date. *See Valve*, 8 F.4th at 1374–76.

**B.**    **The research aids show public accessibility both by directing the public to the article and evincing actual access.**

While indexing and searchability of *Salon.com alone* is enough to find public accessibility, the research aids show actual access by members of the public and support searchability. InMode argues that a research aid must be a "***seminal***" publication and must address the same subject matter. Resp. Br. 54 (quoting *Blue Calypso*, 815 F.3d at 1350) (emphasis in original). Again, InMode turns sufficient evidence into mandatory elements.

InMode's critique addresses indexing and searchability, but not actual access. Two unaffiliated professors cited Ollivier, showing that members of the public actually accessed Olliver, no matter the field of the research aids. That evidence independently supports accessibility. *See Blue Calypso*, 815 F.3d at 1349 n.9.

Even for searchability and indexing, the Court in *Blue Calypso* cited *Cornell Univ. v. Hewlett-Packard Co.*, No. 01-cv-1974, 2008 U.S. Dist. LEXIS 39343 (N.D.N.Y. May 14, 2008), for the proposition that a research aid that actually cites the underlying prior art weighs in favor of its use for evincing public accessibility. 815 F.3d at 1350. Both of BTL's research aids expressly cite Ollivier.

30

The IEEE publication's status to the public mattered in *Cornell* because it showed wide distribution; it was not a threshold requirement.[16] No. 01-cv-1974, 2008 U.S. Dist. LEXIS 39343, at *20–21. The research aids here expressly cite Ollivier and were published books generally available to the public. The Board erred by refusing to consider them as part of the overall accessibility analysis.

The research aids separately supported a finding of indexing and searchability. *See id.* at *21–25. The research aids do not have to prove this by themselves. *See id.* at *22. Rather, they can (and do) bolster the finding of public accessibility when considered as a whole with the remaining evidence. The Board erred by declining to add the research aids to its public accessibility analysis.

### C.    The Ollivier Publication discloses treating the claimed regions required to reverse the Board.

The Board's error was prejudicial. The Board rejected Ground 2 because Edwards, Mosher, and Ingle "are focused on treating internal female genital tissue and do not explicitly disclose treating external female genital tissue recited in claims 43 and 51." Appx30. Ollivier was offered to fill that gap, and the Board excluded it as a printed publication. Appx31-Appx34.

---

[16] The Court quoted the "seminal" status in a parenthetical but did not require such status in its own analysis. *See Blue Calypso*, 815 F.3d at 1350.

Ollivier states that the rejuvenation procedure works "by reconstructing the outer third of the vagina: the orgasmic platform, internal and external vaginal diameter (introitus) and the perineal body[,]" such that "women not only are relieved of incontinence, but they also enjoy increased levels of sexual gratification." Appx1180. That published passage—not the confidential technique—identifies the introitus and adjacent external regions as recognized targets for treatment aimed at sexual function.

The Petition cited Ollivier "to the extent...[treatment of the external vulval areas] was not within the general knowledge of a POSA." Appx177. Directly quoting Olliver, the Petition states that "by reconstructing the outer third of the vagina: the orgasmic platform, internal and external vaginal diameter (introitus) and the perineal body … women not only are relieved of incontinence, but they also enjoy increased levels of sexual gratification." Appx177 (quoting Appx1180). The Petition argued a skilled artisan would use the Edwards-Mosher-Ingle method to treat the vulvar vestibule and labia minora. Appx177-Appx178 (quoting Appx1180, Appx1182). The Petition relied on information published in Ollivier to fill the gap the Board found in Ground 2 of "not explicitly disclos[ing] treating external female genital tissue recited in claims 43 and 51." Appx30.

InMode's harmless-error argument wrongly limits Ollivier to confidential technique details. *See* Resp. Br. 9, 56. The publication itself states the procedure

reconstructs the outer third of the vagina, including the introitus and perineal body. Appx1180. It also discloses treating the labia for claim 51. *See* Appx1180. Although Hart's line is not named, the disclosed area includes the area around Hart's line, and prior art need not mirror claim language verbatim. *See Voter Verified*, 698 F.3d at 1381.

Ollivier was a published publication, and its omission from the obviousness analysis was prejudicial error.

## CONCLUSION

The Board's decision rests on legal errors that infected its obviousness analysis. The Board required express disclosure where *KSR* and this Court's precedent require consideration of what the prior art as a whole taught and suggested to a skilled artisan. In doing so, the Board treated Edwards's speculum as a structural barrier to obviousness and disregarded determinative, contrary evidence. The Board also applied an unduly rigid printed-publication standard to Ollivier. Under the proper standards, the challenged claims are unpatentable. BTL requests that the Court reverse the Board's patentability determinations, or at minimum, vacate and remand for the Board to apply the correct legal standards to the full record.

June 30, 2026

Respectfully submitted,

By:/s/ Seth R. Ogden
Seth R. Ogden
Nathan I. North
**Patterson Intellectual Property Law, P.C.**
1600 Division Street, Suite 500
Nashville, TN 37203
615.242.2400

Dallin Glenn
**BTL Industries, Inc.**
362 Elm Street
Marlborough, MA 01752
508.309.7948

*Counsel for Plaintiff-Appellant BTL*
*Industries, Inc.*

34

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2026-1223

**Short Case Caption:** BTL Industries, Inc. v. InMode Ltd.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes __6,984__ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: __06/30/2026__

Signature: /s/ Seth R. Ogden

Name: Seth R. Ogden

Save for Filing

FORM 30. Certificate of Service

Form 30
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** 2026-1223

**Short Case Caption** BTL Industries, Inc. v. InMode Ltd.

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system.  See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).  Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on 06/30/2026

by  ☐  U.S. Mail  ☐  Hand Delivery  ☑ Email  ☐ Facsimile
☐  Other: _____

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
| --- | --- |
| William A. Hector<br>Michael P. Sandonato | wahector@venable.com<br>msandonato@venable.com |
| Justin J. Oliver<br>Parker G. Zimmerman | joliver@venable.com<br>pgzimmerman@venable.com |
| | |
| | |
| | |

☐    Additional pages attached.

Date: 06/30/2026

Signature:  /s/ Seth R. Ogden

Name:    Seth R. Ogden